## UNION PAC. R. CO. v. UNITED STATES.
### No. 48579.

United States Court of Claims.
Nov. 6, 1951.

Lawrence Cake, Washington, D. C., for plaintiff. Mr. Elmer B. Collins, Omaha, Neb., of counsel.

Marvin C. Taylor, Washington, D. C., with whom was Asst. Atty. Gen. Holmes Baldridge, for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and HOWELL, Judges.

JONES, Chief Judge.

This case involves the same parties, the same issues and the same type of shipment. as the case of Union Pacific Railroad Company v. United States, 91 F.Supp. 762. 117 Ct.Cl. 534.

The issue in that case, by stipulation of the parties, was whether the jeep, as produced in World War II, was a passenger

or a freight motor vehicle within the meaning of the Consolidated Classification schedules. The charges were somewhat higher for passenger than for freight motor vehicles.

On this question numerous witnesses were called, and other evidence, including a great many documents, was presented.

The court decided that the passenger car classification should apply.

The plaintiff moves for summary judgment in the instant case on the ground that the issue is the same as in the previous case.

The defendant resists this motion on the basis of its desire to "re-present the question of proper freight charges for transportation of the motor vehicles, commonly called 'jeeps', in the present case upon an enlarged record as to the factual and legal issues."

The previous case was thoroughly tried and the defendant does not claim that any new facts have been found that were not available at that time.

■ There is nothing specific now proposed by the defendant tending to show that a later jeep was a freight vehicle as distinguished from the earlier passenger jeep. Seeking to furnish merely "an enlarged record as to the factual * * * issues," is too general to form any judgment as to materiality of further "factual issues."

And a reopening of the question to afford "an enlarged record as to the * * * legal issues" is to argue the proposition all over again, as on review or appeal.

■ So-called expert testimony was admitted on tariff interpretations, and this privilege was abundantly availed of by the defendant. Such testimony is of doubtful admissibility, but it is the practice in railroad cases to receive it. "The basic principles which underlie the whole matter of classification and rate making" are beside the point. The court has no occasion to go into the reasoning that prompted the Commission to fix or accept the ratings that were given freight and passenger vehicles in the classification publication. There is nothing to the plaint as to "future shipments of these same vehicles in large numbers." It is difficult to credit sincerity to the statement in view of the well-known privilege of filing applications with the Interstate Commerce Commission for the establishment of reasonable rates.

■■ We can see no good purpose to be served in trying the issue all over again. The rule was stated by the Supreme Court in Southern Pacific Railroad Company v. United States, 168 U.S. 1, 48–49, 18 S.Ct. 18, 27, 42 L.Ed. 355: "The general principle announced in numerous cases is that a right, question, or fact distinctly put in issue, and directly determined by a court of competent jurisdiction, as a ground of recovery, cannot be disputed in a subsequent suit between the same parties or their privies; and, even if the second suit is for a different cause of action, the right, question, or fact once so determined must, as between the same parties or their privies, be taken as conclusively established, so long as the judgment in the first suit remains unmodified. This general rule is demanded by the very object for which civil courts have been established, which is to secure the peace and repose of society by the settlement of matters capable of judicial determination. Its enforcement is essential to the maintenance of social order; for the aid of judicial tribunals would not be invoked for the vindication of rights of person and property if, as between parties and their privies, conclusiveness did not attend the judgments of such tribunals in respect of all matters properly put in issue, and actually determined by them."

This statement was quoted with approval in United States v. Munsingwear, Inc., 340 U.S. 36, 71 S.Ct. 104, 95 L.Ed. 36.

The issue in the previous case was clearly defined, both by the pleadings and the stipulation of the parties. The same issue is presented here.

The defendant adds that it desires "to present and develop in a manner not done at the former trial the basic principles which underlie the whole matter of classification and rate making." We have neither the facilities nor the experience to

go into the complicated field of rate making. Besides, that is a function placed by Congress in the hands of the Interstate Commerce Commission.

We have no means of finding whether a rate established by the Commission is too high or too low. In fact, we are not authorized to pass on that question. We have no rate-making functions.

If the rate is too high the defendant may make a showing of that fact to the Interstate Commerce Commission and may ask for a different classification.

We quote from the opinion in Skinner & Eddy Corp. v. United States, 249 U.S. 557, 562, 39 S.Ct. 375, 377, 63 L.Ed. 772: "If plaintiff had sought relief against a rate or practice alleged to be unjust because unreasonably high or discriminatory, the remedy must have been sought primarily by proceedings before the commission [citing cases]; and the finding thereon would have been conclusive, unless there was lack of substantial evidence, some irregularity in the proceedings, or some error in the application of rules of law [citing cases]."

The construction and application of the published rates and classifications are proper matters for the courts as well as the Commission, but any changes in the published rates and classifications are a matter for the Commission. Great Northern Ry. Co. v. Merchants' Elevator Co., 259 U.S. 285, 42 S.Ct. 477, 66 L.Ed. 943.

As was stated by the Comptroller General in a letter to a Congressional subcommittee under date of June 7, 1948: "It is well settled that the function of determining the reasonableness of duly filed and published rates is one that Congress has committed initially to the Interstate Commerce Commission. See, generally, 49 United States Code 15."

Practically all of the shipments in issue here were made during the war period. Two small shipments were made later, one in 1946 and one in 1947. These were but a very minor part of the total shipments involved, and since there is no allegation that there were substantial changes such as would materially alter the character of the vehicle, we must treat these later shipments as also being war-time jeeps.

We can find no reasonable basis for a retrial of the same issues, and the motion for judgment is granted.

HOWELL, MADDEN, WHITAKER, and LITTLETON, JJ., concur.