**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**NOV 23 1999**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

BECKY ROBERTS,

      Plaintiff-Appellant,

v.

FARMERS INSURANCE COMPANY,
INC.,

      Defendant-Appellee.

No. 98-5234
(D.C. No. CV-97-870)
(Northern District of Oklahoma)

**ORDER AND JUDGMENT**[*]

Before **BALDOCK**, **PORFILIO**, and **EBEL**, Circuit Judges.

Becky Roberts appeals the district court's grant of summary judgment against her

in a garnishment action against Farmers Insurance Company. On appeal, Ms. Roberts

also contends the district court erred in striking her proffered expert witness' affidavit and

in failing to certify two questions to the Oklahoma Supreme Court. We affirm the district

court's decision.

---

[*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. This court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

Ms. Roberts was injured when her husband, Allen Roberts, dropped a pipe on her head while working at their home. Ms. Roberts filed a claim with Farmers, the provider of her husband's homeowner's insurance. When Farmers denied her claim, Ms. Roberts sued her husband in state court, and the couple entered into an agreed judgment for $100,000, the limit of personal liability coverage under the policy. Ms. Roberts then filed a garnishment action against Farmers in Oklahoma state court. Farmers promptly removed the action to the Northern District of Oklahoma based upon diversity of citizenship under 28 U.S.C. § 1332.

The district court granted Farmers' motion for summary judgment on grounds that the policy contained a "resident exclusion" which precluded any recovery by a resident of the insured premises. In the district court, Ms. Roberts acknowledged that the language of the policy precluded recovery for her injury, but argued nevertheless that recovery should be permitted under the doctrine of reasonable expectations because the resident exclusion was either ambiguous or hidden in the policy. To prove her claim of ambiguity, Ms. Roberts attempted to enter into evidence a survey of college students conducted by a psychology professor which concluded that, even after reading the policy, the majority of students believed the policy would cover a homeowner who negligently injured his or her spouse. Ms. Roberts contended that the survey demonstrated a misunderstanding of the policy significant enough to prove it ambiguous as a matter of law. The district court rejected the proffered testimony as irrelevant.

We review a grant of summary judgment *de novo*, applying the same legal standard used by the district court. **Simms v. Oklahoma ex rel. Dep't of Mental Health**, 165 F.3d 1321, 1326 (10th Cir.), *cert. denied*, 120 S. Ct. 53 (1999). Under that standard, summary judgment is appropriate if "there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). In our determination, we will view the evidence and all reasonable inferences that can be drawn from it in the light most favorable to the nonmoving party. **MacDonald v. Eastern Wyo. Mental Health Ctr.**, 941 F.2d 1115, 1117 (10th Cir. 1991).

As she did in the district court, Ms. Roberts concedes the policy as written excludes her from any recovery. She argues, however, that she should be allowed to recover under the doctrine of reasonable expectations. Adopted by the Oklahoma Supreme Court in **Max True Plastering v. U.S. Fidelity & Guaranty Co.**, 912 P.2d 861, 862 (Okla. 1996), the reasonable expectations doctrine permits a court to reform a contract to honor the objectively reasonable expectations of the parties "even though painstaking study of the policy provisions might have negated those expectations." However, the doctrine comes with one important caveat; the reasonable expectations of the parties will only be utilized after the court makes a finding that either the policy is ambiguous or the exclusion is hidden or obscured. **Id.** at 868. Ms. Roberts contends that the resident exclusion in her husband's policy is both hidden and ambiguous.

Ms. Roberts maintains the resident exclusion in her husband's policy is hidden because the declarations page of the policy promises liability coverage of $100,000, while

the resident exclusion which limits that coverage is printed in the smallest typeset in the policy and "buried" on page seven among a "long list" of other exclusions.

Ms. Roberts is indeed correct that the declarations page of the policy shows personal liability coverage in the amount of $100,000 without mention of any exclusions. We do not believe that omission is misleading. The declarations page is little more than a receipt, indicating the various categories of coverage and the amount of coverage purchased for each category. It contains no description whatever of the scope of that coverage. All discussion of the scope of personal liability coverage –both what is covered and what is excluded– is contained on page seven of the policy. On page seven all the personal liability coverages and exclusions are separately numbered and clearly laid out. The resident exclusion is number six on a list of eight exclusions; Farmers has not "buried" it in a "long list" of other exclusions. Finally, the resident exclusion is printed in the same typeset used for the policy as a whole. We conclude the resident exclusion is simply not "hidden." ***See Conner v. Transamerica Ins. Co.***, 496 P.2d 770, 774 (Okla. 1972) (finding an exclusionary clause is hidden if not "conspicuous, plain and clear").

Ms. Roberts also contends that the resident exclusion is ambiguous. To further that proposition, she produced a survey of 126 college students, conducted by a psychology professor, which purportedly demonstrated that, even after reading the resident exclusion in Mr. Roberts' policy, sixty-nine percent of the students believed the

policy provided coverage for a spouse injured due to the policyholder's negligence. The district court excluded the survey as irrelevant to the question of ambiguity.

We review the district court's decision to exclude the proffered expert testimony and accompanying survey evidence under the abuse of discretion standard. ***Mitchael v. Intracorp, Inc.***, 179 F.3d 847, 854 (10th Cir. 1999). The substantive law governing the case determines the relevance of a particular piece of evidence. Under Oklahoma contract law, whether an insurance policy is ambiguous is a question of law which the court answers by looking first to the terms of the policy itself.[1] Only if the contract is found by its own terms to be ambiguous may extrinsic evidence be used to clarify the ambiguity. ***Lum v. Lee Way Motor Freight, Inc.***, 757 P.2d 810, 815 (Okla. 1987). As extrinsic evidence, Ms. Roberts' survey is irrelevant until, and unless, the court makes the threshold finding of ambiguity.[2]

---

[1] This is true both as a matter of statute and of common law. Oklahoma insurance law provides that "[e]very insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy and as amplified, extended, or modified by any rider, endorsement, or application attached to and made a part of the policy." Okla. Stat. Ann. tit. 36, § 3621 (West 1998). ***See Starrett v. Oklahoma Farmers Union Mutual Ins. Co.***, 849 P.2d 397, 400 (Okla. 1993) (noting an insurance policy should be construed according to its terms unless it is deemed ambiguous). ***See also Catts Co. v. Gulf Ins. Co.***, 723 F.2d 1494, 1501 (10th Cir. 1983) ("A contract should be read in its entirety and construed from its 'four corners,' so as to give effect to each clause.").

[2] Ms. Roberts offers us several cases which she contends support the admission of her survey. We recognize, of course, that well conducted public opinion surveys may play an important role in the courtroom. What is critical, however, and where Ms. Roberts goes astray, is that the admissibility of a survey depends on the underlying

(continued...)

We return to the wording of the policy itself to determine if the resident exclusion is ambiguous. A contract is ambiguous if the plain meaning of the words makes it susceptible to two constructions. *Max True Plastering*, 912 P.2d at 869; *Shadoan v. Liberty Mut. Fire Ins. Co.*, 894 P.2d 1140, 1142 (Okla. Ct. App. 1994) (holding the words of a written contract are to be understood in their ordinary and popular sense), *cert. denied* (March 22, 1995). If the contract is indeed subject to two interpretations, it will be construed in the manner most favorable to the insured. *Shadoan*, 894 P.2d at 1142.

The exclusion from personal liability coverage in Mr. Roberts' homeowner's policy states: "We do not cover . . . 6. **Bodily injury** to any resident of the **residence premises** except a **residence employee** who is not covered under Workers' Compensation or Employers' Liability Coverage." (emphasis in original).

Construing every word in the exclusion according to its plain meaning, we see no way to read it except as precluding residents of the insured premises from recovery for

---

[2](...continued)
substantive law. For example, Ms. Roberts cites *Brunswick Corp. v. Spinit Reel Co.*, 832 F.2d 513, 522 (10th Cir. 1987), a trademark case in which a legal issue was the likelihood of confusion between two products. There, a public opinion survey showing consumers actually confused the two products was clearly relevant. Similarly, in *Harolds Stores, Inc. v. Dillard Department Stores, Inc.*, 82 F.3d 1533 (10th Cir. 1996), also cited by Ms. Roberts, a public opinion survey of the plaintiff store's customers was relevant because the plaintiff had alleged an injury to its public reputation and goodwill. In the case before us there is no link between the legal question and the survey evidence; what the public expects from an insurance policy is simply not relevant to the legal question of whether the contract is ambiguous.

bodily injuries. This conclusion is bolstered by the exclusion from liability for medical payments to others which appears on the same page and states: "We do not cover bodily injury: 1. To you or any resident of your residence premises except a residence employee."[3] The plain and ordinary meaning of both clauses is that coverage does not extend to residents of the premises covered by the policy. We hold as a matter of law neither clause is subject to more than one interpretation.

As we have already noted, the reasonable expectations doctrine will not be applied unless the court makes the threshold determination that the exclusion is either hidden or ambiguous. Having reached the conclusion that it is neither, we need not consider the proper application of the reasonable expectations doctrine.

Ms. Roberts argues the district court erred in its refusal to certify two issues to the Oklahoma Supreme Court. We review the district court's decision not to do so for abuse of discretion. *Copier v. Smith & Wesson Corp.*, 138 F.3d 833, 838 (10th Cir. 1998). A district court abuses its discretion when it renders "an arbitrary, capricious, whimsical, or manifestly unreasonable judgment." *FDIC v. Oldenburg*, 34 F.3d 1529, 1555 (10th Cir. 1994).

---

[3] Not only does Ms. Roberts fall under this exclusion as a "resident of the residence premises," but she is also included within the word "you." The first page of the policy clearly indicates all references to "you" include the "named insured" and the "spouse if resident of the same household."

Ms. Roberts first contends there is an open question under Oklahoma law whether, as a matter of policy, insurance companies may exclude household members from coverage under homeowner's policies. Ms. Roberts points out that the Oklahoma Supreme Court has invalidated the household exclusion in automobile liability insurance policies. *See Nation v. State Farm Ins. Co.*, 880 P.2d 877 (Okla. 1994). The *Nation* decision, she believes, indicates that the Oklahoma Supreme Court is wrestling with the propriety of resident exclusions generally, and should be given an opportunity to consider the resident exclusion in the context of homeowner's insurance.

We can see no such indication in that decision. There, the court partially invalidated the resident exclusion clause in auto liability insurance because it conflicted with the Oklahoma statute mandating purchase of auto liability insurance. The court also held the public policy behind mandating auto liability insurance was to compensate innocent victims of the negligent operation of automobiles, and exclusions which prevented such persons from recovering were in direct conflict with public policy. The logic of *Nation* does not apply here because Oklahoma has not mandated the purchase of homeowner's insurance. There is no abuse of discretion in the district court's refusal to certify this issue to the Oklahoma Supreme Court.

Ms. Roberts' second allegation is that there is an open question in Oklahoma whether, under the reasonable expectations doctrine, the expectations of an insured is a question of law or one of fact. This may be true, but neither this court nor the district

- 8 -

court was required to analyze the merits of Ms. Roberts' claim under the reasonable expectations doctrine; she failed to make the threshold showing that the exclusion was ambiguous or hidden. Therefore, resolving the question of whether the reasonable expectations of the insured is a matter for the judge or the jury was not necessary to the disposition of this case. The district court did not err in refusing to certify this question to the Oklahoma Supreme Court.

**AFFIRMED.**

ENTERED FOR THE COURT

John C. Porfilio
Senior Circuit Judge